[Civ. No. 34473. Second Dist., Div. Four. Dec. 8, 1969.]

Estate of HARRY TRUMAN BROWNE, Deceased.
GAYLA LEE BROWNE COBB WEIBLE, Petitioner and Respondent, v.
F. FILMORE JAFFE, Objector and Appellant.

**COUNSEL**

F. Filmore Jaffe, in pro. per., for Objector and Appellant.

Vincent J. Aiken, Vincent J. Aiken, Jr., and Abe Mutchnik for Petitioner and Respondent.

**OPINION**

**KINGSLEY, J.—**

*Facts*[1]

Respondent (Gayla) is the daughter of decedent Harry Truman Browne. Mr. Browne died on September 12, 1966, leaving a will in which Elsie O. Behrends (Behrends) was named as executrix. That will, after making provisions to implement a property settlement agreement with decedent's divorced wife, left the balance of his estate in trust, naming Behrends as trustee. Under the terms of that trust (so far as herein pertinent) Gayla was to receive an income of $4,800 a year, and was to receive one-third of the corpus on her twenty-fifth, thirtieth and thirty-fifth birthdays. Mr. Browne also left several policies of life insurance in which Behrends was named as trustee for the benefit of Gayla. Gayla contended that the life insurance trusts were "dry" trusts and that she was entitled to receive all of their proceeds immediately. Since Behrends did not agree with that contention, Gayla filed an action in declaratory relief to determine her interest in the policies.

In March of 1967, Gayla consulted Jaffe, an attorney-at-law, and ultimately retained the law firm of which he then was a partner to represent her in matters concerning her interest in her father's estate and in the insurance on his life. With reference to the estate proper, she expressed to Jaffe a fear that the executrix was mismanaging the probate estate. The retainer agreement was reduced to writing in a document admittedly prepared by Jaffe. The written agreement was executed on March 8, 1967, and reads as follows: "This Agreement made between JAFFE, OSTERMAN & SOLL, hereinafter called the 'Attorneys' and the undersigned, and each of them, hereinafter called the 'Client.'

---

[1] The formal record on this appeal is lacking in numerous particulars. By stipulation of counsel, we have augmented the record by an examination of the superior court file in Mr. Browne's probate proceeding. The facts hereinafter set forth are drawn from the formal record, from that superior court file, and from uncontradicted statements in the briefs and argument.

"In consideration of the legal services to be rendered by Attorneys in their prosecution of all claims and causes of action that Client may have against ELSIE O. BEHRENDS or any other parties to recover for client any proceeds of insurance on the life of HARRY TRUMAN BROWNE, deceased, or to recover any monies or property for client as the heir, devisee or legatee of HARRY TRUMAN BROWNE, deceased. Client hereby retains Attorneys to prosecute such claims and causes of action and agrees to pay Attorneys as fees to compensate them for their services, 33⅓ percent of all amounts of money or property recovered by or on behalf of Client as the result of settlement of said claims, or by compromise or judgment or as a distribution to Client in the Estate of HARRY TRUMAN BROWNE, deceased.

"Client hereby assigns to Attorneys a lien on said claims and causes of action and on any sums recovered by Client as the result of settlement thereof or judgment thereon and said lien shall be for an amount equal to the sum of the share mentioned above as Attorneys' Fees plus the costs, if any, advanced by Attorneys.

"No settlement shall be binding without Client's consent. If no recovery is obtained, no fee shall be payable to Attorneys. Attorneys may withdraw at any time upon giving reasonable notice to Client.

"No representations have been made by Attorneys regarding the outcome of the prosecution of said claims or causes of action.

"Attorneys agree to prosecute said claims and causes of action through the conclusion of an original trial thereof, where necessary.

DATED: March 8, 1967.

JAFFE, OSTERMAN & SOLL

By /s/ F. FILMORE JAFFE /s/ GAYLA LEE BROWNE COBB
ATTORNEYS CLIENT"

Acting under their retainer, the law firm took certain steps in the probate proceeding, the ultimate result of which was the resignation of the executrix and the appointment of respondent as administratrix. The firm was substituted in as counsel for appellant in the action theretofore filed by other counsel seeking a declaration of rights in the insurance.

On March 7, 1967, Behrends had filed a cross-complaint in Gayla's declaratory relief action, in which she took the position that she held the insurance proceeds on an oral trust, the terms of which paralleled the terms of the testamentary trust. Since Gayla was, by then, 28 years of age, she offered to pay to her, immediately, one-third of the proceeds then collected, and to recognize Gayla's rights to receive further distributions on her

thirtieth and thirty-fifth birthdays. Pursuant to that admission, Behrends paid to Jaffe the sum of $12,000 as being the one-third portion then due. Out of the sum so transmitted to him, Jaffe retained $4,000 as being the 33⅓ percent purportedly due under the retainer.[2]

Thereafter, Gayla discovered that Behrends had filed such cross-complaint one day before she had executed the retainer agreement with Jaffe's firm. Claiming that Jaffe had known of that pleading when he procured the retainer, and that he knew that she would be satisfied with the terms of payment therein proposed by Behrends, and that Jaffe had wilfully withheld from her knowledge as to the cross-complaint, Gayla discharged Jaffe and his firm and, through new counsel, instituted a proceeding under section 1020.1[3] of the Probate Code, attacking the retainer agreement as an assignment of her interest in her father's estate and praying ". . . that the Court inquire into the consideration for said assignments, and into the circumstances surrounding the execution of said assignments, and that any payments thereunder or monies claimed by Attorneys to be due them on the said assignments be on such terms as the Court may deem just and equitable."

After a hearing, at which appellant appeared and testified, the trial court found ". . . that the consideration for the assignment by petitioner of one-third of total amount received or to be received by petitioner from any claim she may have to proceeds of insurance trust or any distribution to petitioner in the above estate is inequitable and grossly unreasonable, but the Court deems just and equitable terms due to Jaffee, Osterman and Soll to be the sum of $2,000.00 for the services rendered to petitioner in the estate and the sum of $2,000.00 for the services rendered to petitioner in

---

[2] Appellant also induced respondent to loan him $3,000 on his personal note. That sum has since been repaid and is not an issue on this appeal.

[3] Section 1020.1: "The court before making distribution of any property of a decedent to any assignee or transferee of any heir, devisee or legatee or before making distribution to any person other than an heir, devisee, or legatee pursuant to any agreement, request or instructions of any heir, devisee or legatee or of any attorney-in-fact of any heir, devisee or legatee may on the motion of any person interested in the estate or on the motion of the public administrator or on its own motion inquire into the consideration for such assignment, transfer, agreement, request or instructions and into the amount of any fees, charges, or consideration paid or agreed to be paid by the heir, devisee or legatee and into the circumstances surrounding the execution of such assignment, transfer, agreement, request or instructions and if it finds that the fees, charges or consideration paid by any such heir, devisee or legatee is grossly unreasonable or that any such assignment, transfer, agreement, request or instructions was obtained by duress, fraud or undue influence it may refuse to make distribution pursuant thereto except upon such terms as it deems just and equitable. Notice of a hearing on any motion made pursuant to this section shall be served personally or by registered mail as the court may direct at least 10 days before the hearing upon the heir, devisee, or legatee executing any such assignment, transfer, agreement, request, or instructions and upon the person or persons claiming thereunder."

the action relative to the insurance trust. To this extent only is the assignment-retainer approved."

Based on that holding, the trial court made an order in the following terms: "IT IS FURTHER ORDERED that the obligation of the petitioner to Jaffe, Osterman and Soll under the assignment-retainer has been paid and discharged by the payment of $4,000.00 by petitioner and that said Jaffe, Osterman and Soll shall take nothing further from the estate or petitioner by reason of such assignment-retainer."

The present appeal is from that order.

## I

At the outset we are faced with a jurisdictional problem. As indicated, the party respondent in the section 1020.1 proceeding was the law firm and not Jaffe, and the order dealt with the rights of the firm as such and not with any rights of appellant as an individual. The notice of appeal is a peculiarly drafted instrument, reading as follows: "PLEASE TAKE NOTICE that F. FILMORE JAFFE, of the law firm of JAFFE, OSTERMAN & SOLL, the respondent herein, claimant of an interest in the estate, party interested in the subject matter of the litigation herein involved, party aggrieved, and appellant, hereby appeals to the District Court of Appeals, Second Appellate District of the State of California, from the judgment, decree and order of the above entitled court entitled ORDER PURSUANT TO PETITION FOR INQUIRY INTO CONSIDERATION FOR ASSIGNMENT, heretofore rendered herein in Department 9 of the above entitled Court, the Honorable ARTHUR K. MARSHALL, judge presiding, filed herein on October 29, 1968, and from all parts of said judgment, decree and order, and the whole thereof.

"DATED: November 5, 1968

"JAFFE, OSTERMAN & SOLL
By: /s/ F. FILMORE JAFFE
F. FILMORE JAFFE

Attorney for Respondent
and Appellant"

We are enjoined by rule 1(a) of the California Rules of Court that "A notice of appeal shall be liberally construed in favor of its sufficiency." Since the notice is signed with the name of the firm, we conclude that, in spite of its curious opening language, we should treat it as a proper notice by the party in the trial court.

## II

As appellant correctly points out, the retainer agreement was with

Gayla as an individual heir and not an attempt to contract with a personal representative for a contingent fee. As such, it was lawful, but subject to the power of the probate court to review its fairness under section 1020.1. (*Estate of Cazuarang* (1946) 75 Cal.App.2d 217 [170 P.2d 694].)

Appellant does not contest the jurisdiction of the probate court to review the fee arrangement insofar as it dealt with services in connection with the estate and he also admits that he cannot here contest the finding that the 33⅓ percent arrangement was excessive and unfair for the services therein performed. His contention, on this branch of the appeal, is that the court had jurisdiction only to reduce the percentage arrangement to a reasonable percent and that it had no jurisdiction to substitute a flat fee for a percentage.

The contention is without merit. The statute provides that the probate court, once it has determined that an assignment is unreasonable, ". . . may refuse to make distribution pursuant thereto except upon such terms as it deems just and equitable, . . ." The broad power thus granted encompasses both the power to reduce a fee arrangement in amount and the power to substitute a fixed fee for an indefinite contingent one. As respondent points out, in *Estate of Lund* (1944) 65 Cal.App.2d 151 [150 P.2d 211], the order affirmed likewise substituted a fixed sum for a percentage arrangement found to be unfair and excessive.

### III

Appellant's chief attack is on the portion of the order that dealt with the retainer agreement as it related to services performed in connection with the insurance policies. His arguments, as we understand them, are two: (1) that the probate court had no jurisdiction to pass on the validity or fairness of that portion of the agreement; and (2) that his firm was unlawfully discharged and, therefore, was entitled to recover under the retainer the full 33⅓ percent and was not limited to a quantum meruit recovery.

The second contention is not available to appellant on the record before us. As we have pointed out above, there was evidence before the trial court from which a finding of good grounds could have been made. Since findings of fact were expressly waived, we must presume, on this record, that the trial court made such a finding.

The first contention misses the point herein involved. The statute, above quoted, expressly authorizes the probate court to ". . . inquire into the consideration for such assignment . . . and into the amount of any fees, charges or consideration paid or agreed to be paid by the heir, devisee or legatee *and into the circumstances surrounding the execution of such assignment, . . .*" (Italics added.) Since Jaffe elected to deal with the fee

arrangement in the probate matter in the same document—and, in fact, in the same sentence— as the arrangement concerning the insurance was set forth, it follows that the probate court, in exercising its admitted jurisdiction over the probate fee, was entitled to look at the facts involved in the insurance retainer, and to pass on the fairness of that arrangement and the claimed fraud in its procurement.

 Further, the statutory power, as expressed in section 1020.1, is ". . . to refuse to make distribution pursuant thereto [*i.e.,* to the assignment or fee arrangement] except upon such terms as it deems just and equitable." Clearly, if the probate court finds that an assignee or attorney has already received as much as the court deems fair and equitable, the court has power to deny any further distribution. By the same token, if the probate court, after examining all of the surrounding circumstances, finds that the assignee or attorney has been overpaid in some collateral matter, it may legitimately "deem" that it would be fair and equitable for the heir to offset that overpayment against the probate assignment or fee and, implementing such an offset, to deny further distribution out of the probate estate.

We have quoted the actual order herein made and the subject of this appeal. It is clear that it did no more than to deny distribution to Jaffe's firm of any more monies on account of their retainer agreement. That order was within the express terms of its statutory jurisdiction.[4] It was supported by the record before the probate court.[5]

The order is affirmed.

Files, P. J., and Dunn, J., concurred.

---

[4]Whether or not the findings in the order relative to the fairness of the fee arrangement in the insurance matter have any effect—by way of res judicata or collateral estoppel—in any proceedings outside of the probate court is not involved in this appeal. We decide only that those findings were proper as part of the probate court's process of determining whether or not Jaffe's firm could collect any money out of the probate estate. If an attempt is hereafter made to collect from Gayla out of any future distribution of the insurance proceeds, the court then involved can determine how far the probate order here affirmed has affected the rights of the law firm.

[5]In addition to the claim that the retainer in the insurance matter was fraudulently obtained, it is admitted that the only services performed by the Jaffe firm, in that connection, consisted of the filing of an answer to Behrend's cross-complaint and the receipt of the $12,000 voluntarily paid to him by Behrends. A finding that $2,000 was an ample fee for that limited service was not without support in the record.